TUBBS *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROAD COMPANIES—NEGLIGENCE—PERSONS LAWFULLY ON STATION GROUNDS.

   One who is upon the station grounds of a railroad company for the purpose of receiving mail and express from a train is entitled to the same protection as one intending to take passage on the train.

2. SAME—TRAINS CROSSING AT DEPOT.

   It is negligence for a railroad company to run a train between a station and a train opposite it, engaged in discharging and taking on passengers, express, and mail.

3. Same—Contributory Negligence.

Whether a person whose duty it is to receive such mail and express is chargeable with contributory negligence in going upon the intervening track for that purpose, without looking to see whether another train is approaching, is a question for the jury, at least where he knows that it is the custom for trains not to pass at that point; and the fact that he enters upon the track before his own train has come to a full stop does not alter the rule.

4. Same—Pleading—Variance.

In an action against a railroad company for negligently running down the plaintiff while crossing a track for the purpose of receiving the mail from one of defendant's trains, the declaration alleged that defendant was engaged in transporting the mail, and that it was customary for it to deliver the mail to plaintiff at the place where the accident occurred; while the proofs showed that the mail pouch was thrown from the train by a United States mail agent. *Held*, that the variance was immaterial.

Error to Washtenaw; Kinne, J. Submitted October 24, 1895. Decided November 19, 1895.

Case by Lucius Tubbs against the Michigan Central Railroad Company for personal injuries. From a judgment for defendant upon verdict directed by the court, plaintiff brings error. Reversed.

*A. J. Sawyer,* for appellant:

The relation existing between plaintiff and defendant at the time of the injury was that of carrier and passenger (Patt. Ry. Accdt. §§ 140 [subd. 4], 207, 208, 215, 220-223; Beach, Cont. Neg. §§ 144, 167; Thomp. Carr. 104-106; *McKone* v. *Railroad Co.*, 51 Mich. 601; *Nolton* v. *Railway Co.*, 15 N. Y. 444; *Blair* v. *Railway Co.*, 66 N. Y. 313; *Seybolt* v. *Railroad Co.*, 95 N. Y. 562; *Tobin* v. *Railroad Co.*, 59 Me. 183; *Yeomans* v. *Navigation Co.*, 44 Cal. 71; *Erickson* v. *Railroad Co.*, 41 Minn. 500; *Watson* v. *Railway Co.*, 66 Iowa, 164); and it was gross negligence on the part of the defendant to suffer a train to run between its passenger house and another train while the latter was in the act of discharging its passengers and mail and express matter (*Marcott* v. *Railroad Co.*, 47 Mich. 6; *Terry* v. *Jewett*, 78

N. Y. 338; *Brassell* v. *Railroad Co.*, 84 N. Y. 241; *Railroad Co.* v. *Hodgson*, 18 Colo. 117).

Plaintiff was not guilty of contributory negligence. Beach, Cont. Neg. § 160; *Railroad Co.* v. *Martin*, 41 Mich. 670; *Chadderdon* v. *Railroad Co.*, 100 Mich. 295; *Jordon* v. *Railway Co.*, 58 Minn. 8; *Weeks* v. *Railroad Co.*, 40 La. Ann. 800; *Warren* v. *Railroad Co.*, 8 Allen, 227; *Wheelock* v. *Railroad Co.*, 105 Mass. 203; *Magee* v. *Street Railway Co.*, 151 Mass. 240; *Maher* v. *Railroad Co.*, 158 Mass. 36; *Davis* v. *Railroad Co.*, 159 Mass. 532; *Lang* v. *Terry*, 163 Mass. 138; *Shelby* v. *Railroad Co.*, 85 Ky. 224; *Railway Co.* v. *Goebel*, 119 Ill. 515; *Pennsylvania Co.* v. *Backes*, 133 Ill. 255; *McMarshall* v. *Railway Co.*, 80 Iowa, 757; *Jetter* v. *Railroad Co.*, 2 Keyes, 154; *Newson* v. *Railroad Co.*, 29 N. Y. 383; *Clark* v. *Railroad Co.*, 36 N. Y. 135; *Voak* v. *Railway Co.*, 75 N. Y. 320; *Brassell* v. *Railroad Co.*, 84 N. Y. 241; *Church* v. *Railroad Co.*, 119 Mo. 203; *Railroad Co.* v. *Matthews*, 7 Vroom, 532; *Klein* v. *Jewett*, 26 N. J. Eq. 474; *Railway Co.* v. *Reeman*, (Tex.) 32 S. W. 45; *McGhee* v. *White*, 66 Fed. 502.

Whether the mail bags were delivered by the agent of the defendant or by the agent of the United States was immaterial, since the defendant had permitted the practice with reference to their delivery to continue for so long a time that it must be held to have had knowledge of it, and to be chargeable with the act and its consequences; and therefore the trial court properly held that there was no variance. *Sargent* v. *Railway Co.*, 114 Mo. 348; *Hughes* v. *Railroad Co.*, 127 Mo. 447; *Carpenter* v. *Railroad Co.*, 97 N. Y. 494; *Snow* v. *Railroad Co.*, 136 Mass. 552.

*John F. Lawrence,* for appellee:

If there was any negligence, it was not that of the defendant, but of the mail agent in throwing the mail pouch in front of an advancing train, while the train from which it was being thrown was still in motion. *Muster* v. *Railway Co.*, 61 Wis. 325. And the variance between the declaration and the proofs in regard to the delivery of the mail was fatal. *Id.*

Plaintiff's contributory negligence was such as to bar a recovery. Patt. Ry. Accdt. p. 224; Beach, Cont. Neg. § 160; *Parsons* v. *Railroad Co.*, 37 Hun, 128; *De Kay* v. *Railway Co.*, 41 Minn. 178; *Connolly* v. *Railroad Co.*, 158 Mass. 8.

MONTGOMERY, J.   This is an action for negligent injury.
The plaintiff has for several years been employed in re-
ceiving the mail from mail trains run on the defendant's
road, and transporting it to the postoffice at the village
of Dexter.   At the Dexter station the defendant's road
consisted of a double track, which extended from a point
a short distance east of the station, westward, at least
as far as Jackson; but from the point of convergence
east of and near the station there was but a single track
extending eastward.   The station at Dexter was a short
distance south of the track.   In the conduct of defendant's
business, western-bound trains were run on the north
track, and eastward-bound trains on the south track.   The
passengers to and from and others having business at the
west-bound trains were required to cross the south track
to reach the train.   The injury occurred to the plaintiff
while receiving mail from the westward-bound train,
which was called the " Grand Rapids Train," or " No. 15."
While thus engaged, he was struck by the engine of the
eastward-bound train, known as " No. 20."

Plaintiff offered testimony that tended to show that No.
15 was due at Dexter at 6:07, and that No. 20 was due
there at about 6:15, but, as it did not stop at Dexter, had
no scheduled time for this station; that for some years,
at least, prior to the injury, the custom was for No. 20 to
approach the station under complete control of the en-
gineer; and, if No. 15 was at the station, No. 20 stopped
west of the station until No. 15 had discharged her pas-
sengers, mail, and express, when No. 20 would pass
through on the south track; if No. 15 had not yet reached
the station, No. 20 would run past the station, and wait
on the south track, east of the station, until No. 15 came
in, when No. 20 would pull out east.   There is also testi-
mony tending to show that No. 20 was not accustomed
to pass the station east without a signal.   The testimony
of the plaintiff shows that he was familiar with the cus-
tom of No. 20 stopping west of the station while No. 15
discharged and received passengers; that he had been to

the train every day for years prior to the injury, and had never known No. 20 to pull up to or pass the station while No. 15 was opposite the station, discharging passengers, but, on the contrary, it was of frequent occurrence for No. 20 to stop west of the station for that purpose.

On the occasion in question (September 29, 1892), plaintiff came to the depot on his usual mission, heard and saw No. 15 coming, wheeled his truck from the east corner of the station house to a point some little distance west of the station house, and a point where he was in the habit of receiving mail and express, seated himself on his truck, and awaited the arrival of No. 15. No. 15 went a little further west than was customary. The mail messenger threw off two sacks of mail, one of which rolled on the north rail of the south track. Plaintiff sprang to get it, to throw it on the truck, and, while in the act of doing so, was struck by No. 20, going east. He testifies that he did not know of the approach of No. 20; that it was his intention to throw the mail across the track, and then run up beside train No. 15, get his express, and step across to the walk, out of the way of No. 20 or any other train that came along at that time, as he supposed it would soon. The evidence tends to show that, when plaintiff was struck by No. 20, No. 15 was still in motion, just coming to a stop. There was testimony that, from a point 200 feet west of the station, the engineer of No. 20 could have seen the headlight of No. 15, 1,500 feet to the east; and it is contended that, knowing of the custom of No. 15 to stop on the north track, and of the necessity of those having business at the train, as well as passengers, to cross the south track, it was an act of negligence for train No. 20 to run between train No. 15 and the station house before the business of discharging passengers, mail, etc., was completed. The circuit judge, while expressing doubt as to the negligence of the defendant, directed a verdict on the ground that plaintiff was guilty of contributory negligence.

In determining this question, the most favorable con-

struction to which plaintiff's testimony is open must be given. In view of this testimony, was it negligence, as a matter of law, for plaintiff to fail to look to the west, or had he a right to rely upon defendant's train not passing over the south track while he was engaged in the manner stated? This precise question has never before been considered in this court, but cases similar have arisen in at least four other states. The leading case on this point is *Klein* v. *Jewett*, 26 N. J. Eq. 474. In that case, passengers were required to pass over a track to reach that upon which an out-going train awaited them. The plaintiff, on hearing the signal, approached the train he intended to take passage on, stepped from the platform to the track just as the passenger train stopped, and was making his way from the point where he first stepped on the track to the platform, between the second and last car, with his back to the east, when the locomotive of a western-bound train, running on the track between the station and the standing train, struck him. Plaintiff was permitted to recover, the court saying:

" The plaintiff, in attempting to pass from the depot to the cars, in the absence of all warning of danger, had a right to regard himself in a place of safety, where he might safely give his whole attention to the business in hand, and was not bound to be on the lookout for extraordinary perils created by the gross mismanagement of the persons in charge of the road."

The court in that case recognized the rule requiring persons about to cross a track to look out for approaching cars, but it was said:

" This rule has no application to the case where, by the arrangement of the corporation, it is made necessary for passengers to cross the track in passing to and from the depot to the cars."

In *Terry* v. *Jewett*, 78 N. Y. 338, deceased left the station, walked diagonally towards the cars, across an intervening track, and, as the passenger train approached, the

107 MICH.—8

freight train struck her. According to the testimony of one of the witnesses, the train came to a standstill, and then started a little, and thus it would appear that the deceased had some reason for supposing that the train had started on its way, although it seems that she was mistaken in respect to its going on. The court said:

" She evidently, however, was impressed with the necessity of haste in reaching the train, and she proceeded on without looking to see whether any other train was approaching. Had she done so, she would, no doubt, have seen the freight train, and avoided the accident. There would have been no impropriety in her moving towards the passenger train had she exercised due care and caution, as she had reason to believe that the train was near at hand, and there was an implied invitation to cross the track. This was an assurance that she could do so with entire safety, but did not justify negligence on her part."

The court further said:

" It was, we think, a question of fact for the jury to decide whether the deceased, under all the circumstances, was chargeable with contributory negligence."

A similar ruling was made in *Brassell* v. *Railroad Co.*, 84 N. Y. 241, and the doctrine of *Klein* v. *Jewett* was followed by the supreme court of Colorado in *Denver, etc., R. Co.* v. *Hodgson*, 18 Colo. 117.

These cases clearly sustain the contention of plaintiff that it was negligent for the railroad company to run a train between the station house and a train opposite the station, engaged in discharging and taking on passengers, and that it is not negligence *per se* to attempt to board a train so standing without looking for an approaching train; that it is for the jury to decide whether, in view of the invitation to board or alight from the train, the passenger was not entitled to assume that the way was clear; and that the rule requiring one approaching a railroad crossing to look and listen does not apply in all its strictness to a passenger acting on such

an invitation.  Nor do we think that one having necessary and customary business with those on the train; as in case of the plaintiff in the present case, for the purpose of receiving mail and express, stands in any different relation to the company than one intending to take passage on the train.  Both are there by invitation, and neither as a mere licensee.  Thomp. Carr. 106.

Defendant's counsel cites the case of *Connolly* v. *Railroad Co.*, 158 Mass. 8, which lays down a rule somewhat at variance with the cases to which reference has been made. This case, as well as *Debbins* v. *Railroad Co.*, 154 Mass. 402, was determined by a majority of the court, and the views of the minority are not given; but we think the decision by the majority does not in either case furnish an answer to the cogent and convincing reasoning in the New Jersey and New York cases.  Defendant's counsel also cites the case of *De Kay* v. *Railway Co.*, 41 Minn. 178; but that case is clearly distinguishable, as well from the New York, New Jersey, and Colorado cases as from the present.  In the De Kay case the standing train was on a side track, which, the court said, "was not the designated or appointed place for the egress or ingress of passengers. The place for that was at the platform.  *  *  *  It [the train] was run in upon the side track solely for the purpose of letting another train pass."

The question still remains whether it can, in the present case, be said that the plaintiff was invited to take the position he did before the western-bound train came to a stop.  We think this was a question for the jury.  We cannot say, as a matter of law, that persons having business with a train at a way station, at which the stop is but momentary, are guilty of negligence in not waiting until the train comes to a standstill.  It is a fact open to every-day observation that those awaiting the arrival of a train do not wait until the train stops, but, on the contrary, as the train approaches, those having business with the train take their position near the track, and wait for the train to come to a standstill.  Indeed, this custom

is so general that it must be within the knowledge of those operating trains.

It is contended that there was a fatal variance between the declaration and the proofs, and for that reason the judgment should be affirmed. The declaration asserts that defendant was engaged in transporting mail, and that it was the custom for defendant to deliver the mail to plaintiff at the point stated; while it is said that the proofs show that the mail was delivered by the United States mail agent. We think this is too technical a view. It is true the mail agent actually threw the pouch from the train, but this he could not have done had not the train conveyed it to the spot, and afforded opportunity for its delivery. The gravamen of the charge was that, in view of the custom thus to furnish opportunity to plaintiff to receive the mail, defendant neglected its duty in making the place at which the mail was to be received reasonably safe. A different question would be presented if a direct injury had resulted from the throwing off of the pouch by the mail agent. No negligence in this regard was charged.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.