JAMES MURRAN v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

June 20, 1902.

Nos. 13,002—(168).

**Personal Injury—Questions for the Jury.**

*Held*, in a personal injury case, that upon the evidence the question of defendant's negligence, as well as that of plaintiff's contributory negligence, were for the jury, and that the trial court erred when it withdrew these questions and ordered a verdict in defendant's favor.

Action in the district court for Ramsey county to recover $25,350 for personal injuries. The case was tried before Bunn, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Samuel A. Anderson* and *John D. O'Brien*, for appellant.

*F. W. Root*, for respondent.

COLLINS, J.

This is a personal injury case, the appeal being from an order denying plaintiff's motion for a new trial. When, at the trial, the latter rested his case, defendant's counsel also rested, then moved for a verdict in its favor. The court granted the motion, and such a verdict was returned.

. The plaintiff had been in defendant's employ as a section man in

1 Reported in 90 N. W. 1056.

a part of its yard contiguous to the Union Station in St. Paul for about one week before the accident occurred. It was in the winter season, and most of the time he had been engaged in cleaning out snow and ice from the yard switches. In the forenoon of this particular day he went with the foreman and one or two other laborers to a switch upon one of the tracks some two hundred feet east of the station shed, and was set at work cleaning out snow and ice which had accumulated therein. The foreman and other men were at the same kind of work not far distant. A very brisk easterly wind was prevailing, blowing about twenty-four miles an hour. Snow was falling, and to some extent was being blown about in the air, and there were already four or five inches on the ground. While he was thus at work, a switch engine, with eight or ten cars attached, passed easterly, stopping some three hundred feet beyond the switch. The engine then commenced to "kick" cars onto defendant's side tracks on the south, between where plaintiff was at work and the river. There was some dispute as to whether cars were kicked westerly over the switch and track at which plaintiff was or over a switch and track nearer the river, but it is not very material where these cars were sent. There was sufficient notification, in any event, for plaintiff admitted that enough transpired to warn him of the risk, and also admitted that he appreciated and understood the danger of working at that point while an engine was east of him throwing cars onto the side tracks. He testified that he kept a careful lookout, knowing that no one was by to warn him of approaching danger, and fully understanding that it was his business, as a section man, to look out for himself while at work in the yard. He kept a constant watch to the east. He then saw the train motionless, about where it first stopped, and, for convenience in getting the snow and ice out from under a cross-bar which connected the two rails, turned his back to the east, and was struck within a half minute by a single car, which had been thrown over the switch he was cleaning out. It appeared that just about the time he turned his back this car was sent in his direction, starting with a speed of ten miles an hour and slowing down to about three miles, when it struck him. No notice or warning was given that

it was coming, although the switchman in charge stood on the ground, within a few feet of the car as it ran along, saw that plaintiff had turned his back, and was in a stooping position. This man could easily have stopped the car before it reached plaintiff if he had tried, but he did not make any effort so to do. When the car was within about one hundred fifty feet of plaintiff, he did exert himself sufficiently to shout, although he knew, as he expressed it on the witness stand, that his voice was not "in it" as against the wind. The shouting was not heard by plaintiff.

The rule which governs in cases of this kind is stated in Schulz v. Chicago, M. & St. P. Ry. Co., 57 Minn. 271, 59 N. W. 192, to the effect that section men assume the risk of being injured by approaching trains; that it is not, under ordinary circumstances, customary to give them notice or warning of the approach of trains, and that they ordinarily look out for themselves, but that to this general rule there are exceptions.

It is obvious that it is impossible, under nearly all circumstances, to give warning to section men of impending danger from trains running over the road, and it is equally obvious that the plaintiff had no right to rely absolutely upon any expectation that he would have actual warning or notice of the movement of the car which injured him. But he was working in an exceedingly perilous place under peculiar and exceptional circumstances. Snow was flying in the air, and a very strong wind—almost a gale—was blowing towards the engine and cars and towards the man who saw him in danger and shouted to him. He was stooped over, engaged in work, with his back towards the approaching car. This was all seen and understood by the man in charge of the switching, and a jury could well say that it should have been apparent to him that plaintiff might not discover his peril in time to escape injury, and, as a consequence, that he was negligent in not taking active steps to prevent the injury. The plaintiff knew of the presence of the switchman, and had the right to suppose that he would exercise reasonable care should he discover him in an exceedingly dangerous position or place. So that, under the circumstances, the question of defendant's negligence arising out of a failure of the fellow servant to give plaintiff reasonable warn-

ing of the approach of the car, for which, under the fellow servant act, defendant may be held responsible, was for the jury. This much upon the point that a railway company when operating its trains owes a section man no duty at all except to avoid wanton and wilful injury to him. That is not the law.

It also appears that the court below held it to have been conclusively shown by the testimony that plaintiff was guilty of negligence which contributed directly to, and was the proximate cause of, the injuries received. We cannot concur in this. He was not negligent in being on the track when at work cleaning out the snow and ice, nor was he negligent in assuming a posture wherein he could do the work most advantageously for defendant company. He was not negligent up to within half a minute before he was struck, for he was careful and watchful all of this time. We do not think that, as a matter of law, he was guilty of contributory negligence because he did not look within that half minute, and thus see the car approaching, when we consider the facts as they existed. The care required of him on this occasion was such, and only such, as a reasonably prudent man would exercise under like circumstances; and whether or not he did exercise the required care reasonable men might fairly differ, in our opinion. If so, the case was for the jury on this point. It must not be forgotten, when considering what care was required on plaintiff's part, that he had a right to presume, and to act upon this presumption, that he would not be exposed to unusual and unnecessary hazards, and, further, as before stated, that the man in charge of the cars would exercise reasonable care with reference to him, if he saw and appreciated the peril plaintiff was in.

The order is reversed, and a new trial granted.