LILY S. ARENSCHIELD, as Administratrix of the Estate of W. S. ARENSCHIELD, Deceased, Appellee, v THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Railroads: ASSUMPTION OF RISK: EVIDENCE. The burden is upon the one pleading the assumption of a risk not usually incident to the employment, and unless the evidence in support of the plea is such that reasonable minds can reach but one conclusion, a verdict should not be directed. Evidence held insufficient to show assumption of the risk as a matter of law.

**Contributory negligence.** Where there is a conflict in the evidence
2  the question of contributory negligence is for the jury, and
the court cannot direct a verdict.'

**Negligence:** INSTRUCTION. In an action for the death of an engi-
3  neer, who was run over while crossing a track in defendant's
yard, the court's instruction regarding various phases of the
negligence charged, when construed as a whole, is not open to
the objection that the jury was authorized to find defendant
negligent unless it provided a man or guard at the, crossing
and also a lookout on the engine.

**New Trial:** NEWLY DISCOVERED EVIDENCE. It is not error to refuse
4  a new trial on the ground of newly discovered evidence, where
the same is merely cumulative.

*Appeal from Scott District Court.*— HON. D. V. JACKSON,
 Judge.

TUESDAY, OCTOBER 24, 1905.

ACTION to recover damages for the death of W. S.
Arenschield, occasioned by the alleged negligence of the de-
fendant. Verdict and judgment for the plaintiff, and de-
fendant appeals. The material facts are stated more fully
in the opinion.— *Affirmed.*

*Carroll Wright* and *Cook & Dodge,* for appellant. .

*Lane & Waterman,* for appellee.

WEAVER, J.— For several years prior to the accident
in question W. S. Arenschield had been in the employ of the
defendant as locomotive engineer upon its lines in and about
the town of Eldon, Iowa., On January 1, 1903, said engi-
neer was in charge of a locomotive hauling a work train or
pile driver on one of the lines of defendant's road, and dur-
ing the forenoon of that day brought his train into the Eldon
yard in order to clear the track for another train. The yard
contains several tracks and side tracks, extending substan-
tially east and west, over which engines and trains are fre-

quently moved. These tracks are crossed nearly at right angles by the main track of the Keokuk & Des Moines Railway, a part of the defendant's system. West of the Keokuk & Des Moines crossing, and in the midst of the tracks, is a coal chute, which receives its coal from cars hauled to the top of a trestle over a track constructed for that purpose. The trestle is about fourteen feet in height, and the track accomplishes the ascent at a maximum grade of 7 per cent., or at the rate of a rise of about 365 feet to a mile. The east end of this sloping track reaches the level of the yards within a short distance west of the Keokuk & Des Moines Railway crossing. Closely bordering upon the yards upon either side are restaurants, saloons, and other buildings. The passenger station or depot building stands at the junction on the north side of the yard we have attempted to describe, and on the east side of the Keokuk & Des Moines track. After bringing in his train, as already stated, Arenschield left his engine temporarily and went to a restaurant standing just south of the yard and west of the Keokuk & Des Moines track, where he procured a lunch, with which he started back in the direction of the depot building, which was also the general direction of the place where his own engine was standing. His course was along a path or way which had been in use by the public and by railway employés for many years. Standing cars, the number and location of which are variously stated by the witnesses, occupied some or all of the tracks south of the coal chute and west of the Keokuk & Des Moines crossing, thus obstructing his view of the chute and of the track ascending thereto. As he passed from behind these cars and stepped upon the coal-chute track at a point very near the foot of the steep grade to which reference has been made, an engine which was backing down from the top of the trestle ran over him, inflicting injuries from which he soon died.

It is the claim of the administrator of his estate that the injury and death of the deceased were occasioned by the

negligence of the defendant and its employés, and without
contributory fault on his part. The charge of negligence
rests upon the following specifications: (1) That the engine
which ran over the intestate was being operated at a reckless
and unreasonable rate of speed; (2) that the engine was
old and out of repair, and not equipped with proper or
effective brakes; (3) that the way or view across the yard
was unreasonably obstructed by standing cars; (4) that the
engine was not of such kind or in such condition that it
could properly or safely be operated upon the steep grade
of the coal chute track; (5) that the employé of the defend-
ant operating said engine at the time of the injury was not
a skilled engineer, but a fireman who was not only incompe-
tent for the position, but had been maimed by the loss of a
part of his right hand, rendering him unfit and unable to
properly manage and control the machinery placed in his
charge; (6) that the engine was not a switch engine fitted
for work in such a yard, but was an ordinary road engine,
having a high tender, which obstructed the view of the track
in that direction by the engine men and was provided with
no lookout or guard; (7) that the engine was run backward
at a high and reckless rate of speed down the grade of the
coal-chute track over the intestate, without giving any warn-
ing of its movement by sounding the whistle or ringing the
bell; and (8) that the engine was being thus operated with-
out a lookout and without a watchman upon the crossing,
in. violation of the published rules of the defendant govern-
ing the management of the yard. and the conduct of its em-
ployés. To this charge the defendant answers in denial,
and alleges that the intestate was familiar with the yard of
the company at Eldon, and knew that engines and trains
were frequently operated upon and over its tracks at a high
rate of speed, and sometimes without the customary signals
and without a watchman stationed at the crossing, whereby
it is alleged said intestate, by remaining in the defendant's
service, assumed the risk of injury from such causes. It is

further alleged that the danger to which the intestate was exposed by reason of the conditions alluded to "was a risk incident to the service which he contracted to perform," and defendant cannot be held liable for injuries thus occasioned to him.

I. It is the contention of the appellant that the verdict for damages to Arenschield's estate is not sustained by the evidence. In support of this proposition it is not claimed

1. RAILROADS: assumption of risks: evidence.

or argued in this court that no negligence has been shown on part of appellant, but it is strongly insisted that such negligence, if any, pertained to the usual or habitual, or at least the frequent, method of handling and moving switch engines and other engines and cars in and through the yard of the appellant at Eldon, with all of which Arenschield had long been familiar, and must be held as a matter of law to have assumed the risk of injury therefrom. It may, for the purposes of the case, be conceded that a master may say to a servant suing on account of injuries occasioned by the master's negligence, "You knew or ought to have known that I have been habitually negligent in respect to the matter charged, and, in entering or remaining in my service when you knew or ought to have known of such practice, you took upon yourself the risk of injury at my hands"; but it is a doctrine which the courts are not inclined to extend beyond the limits fairly indicated by controlling precedents. Moreover, the plea of assumption of risks not naturally and usually incident to the employment when properly conducted is an affirmative one, and the burden of its establishment is upon the employer. The trial court could not properly have directed a verdict or granted a new trial on this ground, unless the testimony in support of the plea was so clear and uncontradicted that no intelligent fair-minded juror could reach the opposite conclusion. That such is not the state of the record, we are well satisfied.

It is fairly shown that Arenschield had formerly oper-

ated a switch engine in the Eldon yard, and thereafter was frequently upon and about the crossing where he was killed, and must have been to some degree familiar with the customs there prevailing; but the general or habitual operation of engines down the coal chute grade at high or dangerous rates of speed is not so clearly or indisputably shown that we may say, as a matter of law, that, if deceased did not know it, he ought to have known it and governed himself accordingly. One witness, at least, testifies, in substance, that the usual speed did not exceed six miles an hour, and that the speed of the engine at the time of the accident was not in excess of that rate. Another says the usual speed on this track was from five to six miles an hour. Another speaks of the usual speed as a "moderate gait," whatever that may mean. Others place the speed at the time of the accident at from twelve to twenty miles an hour. Several witnesses aver that trains and engines were quite frequently moved over the crossing at comparatively high speed, and without the signals prescribed by law and the rules of the company; but, few, if any, connect this negligent or reckless practice with the use of the coal chute track. As we have already described, this track differed from all others in the yard in its construction and use. From the coal chute it descended a very steep grade to a point near the Keokuk & Des Moines crossing, and in the very nature of things an engine could not be sent backward down this hill at such a high rate of speed without much greater danger than would arise from indulgence in the same rate of speed upon the other tracks of the yard. There is no evidence that Arenschield himself used the track in this manner, and, if it was so used by others, the inference of knowledge thereof on his part is one for the jury and not for the court.

It is not claimed that the deceased was a trespasser, or that (except for the alleged assumption of risk) he was not entitled to rely upon the exercise of reasonable care by the appellant and its employés in the operation of its trains and

engines in the yard. The instructions given upon this branch of the case state the rules of law applicable thereto with marked simplicity and clearness, and their entire fairness to appellant is conceded by counsel. Such being the case, and the affirmative defense put forth· by the appellant not being so clearly established as to justify a peremptory instruction against the plaintiff, there was no error in refusing to set aside the verdict.

It is suggested, but not argued, that the jury should have found for the appellant on the ground that deceased was chargeable with contributory negligence. We shall not

2. CONTRIBUTORY NEGLIGENCE. extend this opinion by any discussion of the testimony in this respect. Contributory negligence is peculiarly a question for the jury, and, where there is room for reasonable and fair-minded men to reach different conclusions upon the facts disclosed on the trial, the court cannot assume to direct or interfere with the verdict of a jury which has been properly instructed upon the law of the case. Under this rule, so well established that it would be idle to cite authorities in its support, we have to say the record discloses no error in the ruling of the trial court. There is much evidence in the case, bearing upon the several allegations of negligence, which we do not attempt to recite or comment upon, preferring to dispose of the appeal upon the points principally argued by counsel. As usual in this class of controversies, there is much conflict in the testimony; but we think the issue was in every respect properly submitted to the jury, and no error is shown calling for a reversal of the judgment.

II. Error is assigned upon the eighth paragraph of the court's charge, which reads as follows:

(8) Whether the rate of speed at which engine No. 587 was running at the time it is alleged to have struck Aren-

3. NEGLIGENCE: instruction. schield was a negligent rate, and whether or not it was negligence to fail to give signals of its approach, or to station a man upon the crossing and the

rear of the engine, if you find from the evidence there was a
failure in either or both respects, depends upon the place,
the use made of such crossing, and the surroundings of said
crossing at the time, as known by those in control or charge
of said engine; it being defendant's duty to so operate and
move its engines over said crossing as not to needlessly en-
danger persons rightfully thereon.

It is said in support of this exception that the words,
" or to station a man upon the crossing and the rear of the
engine," as employed in this paragraph, authorized the jury
to find the appellant chargeable with negligence, unless it
provided both a lookout on the rear of the engine and a
watchman or guard at the crossing; and that " there is no
evidence of any rule, practice, or custom ever prevailing or
known whereby the defendant was required, or in the exer-
cise of due care should have been required," to take both of
these precautions against possible accident.

Segregating a single clause of this paragraph from its
context, it may be given the meaning put upon it by counsel;
but, when taken as a whole, it is not fairly susceptible of
such construction.   The court was calling attention to the
various acts or phases of negligence alleged by the plaintiff,
and said to the jury, in substance, that whether there was
any want of reasonable care on part of defendant in either
or all of these respects depended upon the surrounding cir-
cumstances and the nature and extent of the apparent dan-
gers to be guarded against.   Of this statement it is obvious
that neither party may properly complain.   In saying this
we do not mean to be understood as holding that, even as
interpreted by counsel, the instruction would necessarily be
held erroneous.   We are not prepared to say that if defend-
ant's engine, equipped with a high tender shutting off a view
of the track from the enginemen, was sent backward at a
high rate of speed down the sharp grade from the chute and
over the crossing at its foot, the jury may not have been
justified in finding that due care for the lives of those right-

fully in and about the yard at that point required both a
lookout on the engine and a watchman at the crossing.   Gen-
erally speaking, the court cannot tell the jury what acts do
or do not constitute due care, but must leave the question for
their determination from all the proved facts and circum-
stances.

III.   Upon the trial the defendant introduced a wit-
ness, one La Fever, who testified to having seen Arenschield
take a drink of whisky a short time before he met his death
in defendant's yards.   Among the grounds
stated in the motion for a new trial was the
discovery of new evidence, in that another wit-
ness, one Kuhns, had been found who would testify to hav-
ing seen deceased take a drink of whisky about the same
time and in the same saloon referred to in La Fever's testi-
mony; and this, it is argued, should have been held sufficient
ground for setting aside the verdict.   Counsel can hardly be
serious in this contention.   The stories of the two witnesses
La Fever and Kuhns evidently refer to the same circum-
stance.   Taking all they both say as literally true, its effect
is to prove that Arenschield on that morning took a single
drink of intoxicating liquor.   There is not a scintilla of evi-
dence that he was in the least degree intoxicated or his fac-
ulties in any manner impaired by reason of the drink in
which he had indulged.   In any event, the new evidence
was clearly cumulative, and the motion based thereon was
properly overruled.

No reversible error being shown, the judgment of the
district court is *affirmed.*