[No. 7747.]

# SAGARA v. CHICAGO, ROCK . ISLAND & .PACAFIC RAILWAY COMPANY.

1. RAILWAY COMPANY—*Duty Towards Trackmen.* A railway company is under duty to provide that when a train approaches a gang of track repairers it shall give them a signal, in reasonable time, so that they may get out of its way. (239, 240)

2. NEGLIGENCE—*Railway Company—Injury to Trackman.* A track repairer, engaged in repairing track, was run down and seriously injured by defendant's train. The train was running slowly and might have been stopped within twenty-five or thirty feet. There was evidence that the bell was not rung, nor the whistle sounded, that the track repairer was in plain view, but that the engineer was looking to the rear of his train. *Held* that the evidence was sufficient to convict the railway company of negligence, and that the question should have been left to the jury. (240)

3. CONTRIBUTORY NEGLIGENCE—*Railway Trackman.* One employed in the repair of the tracks of a railway where trains are frequently passing is under duty to keep such lookout as a reasonably prudent man would do under like circumstances. The circumstances of the particular case control. It is not to be determined as matter of law how often he must look about him. (241)

Plaintiff was one of a group of men employed in repairing the track of a railway, and while so employed was run down and seriously injured by defendant's train. He testified that he was not aware of the approach of the train; that no signal was given; that he knew that trains were likely to pass, and that it was his rule to look for an approaching train at intervals of from one to ten minutes. Some of the party were still at work upon the tracks, at the time of the injury, and next previous thereto. The train came from the north and was moving slowly with little noise; plaintiff was facing to the south. The work in which he was employed occasioned some noise, and a train upon another track nearby was passing at speed. *Held* that the question of contributory negligence should have been left to the jury. (241, 242)

4. ——*Last Clear Chance.* It appearing that the engineer, if he had looked, must have seen the plaintiff in his exposed position, while still at a considerable distance from him, and that the train might have been stopped within twenty-five or thirty feet, it was *held* that

even if plaintiff were convicted of contributory negligence, he was entitled to recover under the approved doctrine of Last Clear Chance. (242, 243)

*Error to Denver Distrct Court.*—Hon. H. C. RIDDLE, Judge.

Messrs. STARK & MARTIN, for plaintiff in error.

Mr. WILLIAM V. HODGES, Mr. MASON A. LEWIS and Mr. PAUL E. WALKER, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff was an employe of the Denver & Rio Grande Railroad Company, and working as one of a gang of trackmen upon the tracks of said company, about one mile, north of a station named Pinyon, between the cities of Colorado Springs and Pueblo.

The defendant, The Chicago, Rock Island and Pacific Railway Company operates its trains between the said cities over the tracks of the Denver & Rio Grande Company. The train that caused the injuries complained of, was proceeding from Colorado Springs in a southerly direction toward Pueblo. The plaintiff was at the south end of the squad of men, working on the track. The line of men extended a distance of about three hundred feet, the plaintiff being at the extreme south end of this line. The engine of the train struck the plaintiff, causing severe injuries, including the crushing of one of his legs so that amputation became necessary. At the close of plaintiff's testimony, the court directed a verdict for the defendant, company. Upon this ruling the case is before us for review. The grounds upon which the motion for a directed verdict was based, were: that no negligence whatever appears upon the part of the defendant; that the testimony shows the plaintiff to

have been guilty of contributory negligence; and that the injury arose out of the risks assumed by the character of the employment.

It appears that the train had slowed down as it approached the trackmen, and when at a point about one hundred feet north of the foreman, who stood at the north end of the line of workmen, the latter gave the engineer a signal to proceed. At the time the engine struck the plaintiff, the train was moving at a speed of about five miles per hour. The plaintiff was at the time of the accident facing the south with his back to the approaching train, engaged in spacing and adjusting ties, in a stooped position, working with a shovel, and standing between the rails. A fellow-workman who was also injured, was working with plaintiff and engaged in spiking the rails to the ties as these were adjusted by the plaintiff.

The testimony shows this work occasioned some noise, and also, that there was at the time a fast moving train passing upon the track of another railroad, about two hundred feet distant, and moving in an opposite direction to that of the train in question.

The plaintiff testifies that he was not aware that the train was approaching prior to the injury; that no bell was rung, nor whistle blown, nor other warning of its approach. The train was moving on a down grade of about one-half of one per cent, and consisted of an engine, eight freight cars and caboose. A locomotive engineer who had run over the track for many years testified that such a train, at the rate of speed given, running in that direction and at that point, could have been stopped from within twenty-five to thirty feet. It appears that the train did proceed about two hundred and fifty feet after striking the plaintiff.

One of the workmen, an interpreter, testified that

after the foreman gave the signal, he called out to the
men, but the plaintiff did not hear him, and it does not
appear that he was sufficiently near to hear the call.

The plaintiff says that he has worked in the same
capacity for some time, knew that trains were likely to
pass and also, that it was the rule and custom for en-
gineers to blow the whistle and ring the bell on ap-
proaching the workmen, and that it was his rule to look
for approaching trains at intervals of from one to ten
minutes.   The court however, struck out the testimony
as to the custom of engineers, on the theory that the
plaintiff was not an employe of defendant company.

There appears to be a plain view of the track for
at least a mile north of the point where plaintiff was
injured, and two of the witnesses say they saw the train
at a point several hundred feet north of where the men
were working, but these witnesses were not nearer plain-
tiff than one hundred and fifty feet, and to the north of
him.

The court refused to permit witnesses other than
the plaintiff, to testify that the whistle was not blown
or the bell rung, before the accident, but suggested that
such testimony would be proper if it could be shown that
the warning was given before the foreman signalled the
engineer.

Just why such distinction should be made is not
clear, and particularly in a case where no warning was
given at all.   If it was the duty of the engineer to give
warning at all it was his duty to do so at any point
within reasonable time.   A witness named Ono testified
that he was about one hundred and fifty feet north of
plaintiff, and that when the engine came within about
150 feet of him, the engineer turned around and looked
the other way, and was still looking backward when the
engine passed him.

The train was running slowly on a downward grade, and therefore it could not have made much noise in the matter of the movement alone. The signal given to the engineer could mean only that the track, then being repaired, was in such condition as the train might pass over it. The workmen, or at least a part of them, were still at work on the track. · No whistle was blown, no bell was rung or other warning given, and the engineer himself, from the time he reached the squad of men until he reached a point midway between the northerly and southerly ends of the gang of men, or a distance of about one hundred and fifty feet at least, and possibly until the plaintiff was struck, was looking backward and thus clearly guilty of a violation of his duty. That he could have stopped his train at any time within a distance of twenty-five to thirty feet, coupled with the fact that he did not stop the train until it had passed a distance of two hundred and fifty feet after striking the plaintiff; all this is sufficient evidence of negligence as to impose the clear duty upon the court to submit that question to the jury. The duty of a railway company under such circumstances is stated by Judge Thompson to be: ·

"It is the manifest duty of a railway company to provide that, when a train approaches a group of track repairers engaged in their work, it shall signal them to the end that they may get out of the way. The reason is plain to judges who are desirous of justice and right. A squad of railway laborers will not be able, while attending closely to their duties, to keep a strict lookout for approaching trains; but absorbed in the performance of those duties, bent down, watching the track, shoveling gravel or driving spikes a rapidly moving train may come upon them without their being aware of its presence in time to step aside for it to pass. On the other hand,

the servants of the company in charge of the train are driving the instrument of danger, and there is a manifest duty on their part to keep a constant lookout to the end of protecting from danger all persons who may be lawfully on the track, and of warning them in time to enable them to avoid being run over.''—Thompson on Negligence, Sec. 4488.

This doctrine seems not only to be sound, but is well sustained by the authorities. Under the state of facts presented the court cannot say as a matter of law, that the plaintiff was guilty of contributory negligence.

Without doubt; it was the duty of the plaintiff to have kept such lookout for the approach of trains as is consistent with the duty of a prudent man similarly situated.

The plaintiff testifies that he looked for approaching trains at intervals of from one to ten minutes. Whether this, under all the circumstances was sufficient or whether it constituted negligence, was a question of fact for the jury, and not a conclusion of law for the court.

It was held in *Smith v. Southern Pacific Co.*, 58 Ore. 22, 113 Pac. 41, Ann. Cas. 1913 A, 434 that where a railroad trackman is working on a track which is being used for the passage of trains, it cannot be determined as a matter of law how often he is required to look in order to fulfill the duty of ordinary care; that being a question for the jury.

It was further said in that case, that where a railroad trackman was engaged in repairing the track under such circumstances as would justify him in assuming that ordinary care would be observed to warn him of approaching danger, he was only required to exercise such care and vigilance in discovering the peril and avoiding the injury as was consistent with the performance of

the work in which he was engaged. To the same point *St. L., I. M. & S. Ry. Co. v. Jackson,* 78 Ark. 100, 93 S. W. 746, 6 L. R. A. (N. S.) 646, 8 Ann. Cas. 328; *Schultz v. C., M. & St. P. Ry. Co.,* 57 Minn. 271, 59 N. W. 192; *Shoner v. Pennsylvania Co.,* 130 Ind. 170, 28 N. E. 616, 29 N. E. 775.

The decree of care to be observed by a trackman in such cases must be determined by the facts and circumstances of the particular case. As for instance, if working in the yards of a railroad company where switch engines are constantly moving over the tracks, then the workman would necessarily be held to a stricter degree of care, than if working along a line of track over which trains pass only occasionally. The question of contributory negligence in this case was clearly for the jury, under proper instructions.

But if contributory negligence in this case should be conceded, then under the testimony, the question of the last clear chance is entitled to consideration and determination by the jury.

The engineer received the signal of permission to pass over the track then being repaired, when about four hundred feet from the plaintiff. It was in the day time. There was a clear view of the track and all the workmen upon and about it at the time. There appears to be no time after receiving the signal, that the engineer could not by the exercise of reasonable care, have seen the plaintiff in his perilous position, to have stopped his train at any time within twenty-five to thirty feet, but that he did not stop it until it had proceeded two hundred and fifty feet after striking the plaintiff, tends to confirm the testimony of the witness that the engineer was looking backward at least a part of the time, and also, to justify the inference that he did not see the plaintiff until after the accident, all of which, if true,

constitutes such neglect of duty as will entitle the plaintiff to recover.

Counsel for defendant attack vigorously, the doctrine of the last clear chance, as announced by this court in the case of *The Denver & Rio Grande Company v. Buffehr,* 30 Colo. 27, this doctrine has been repeatedly reaffirmed and reiterated by this court, the last reported case upon that subject being that of *Catlett v. Colorado Southern Co.,* 56 Colo. 463, 139 Pac. 14. This rule is reasonable and humane and is so well settled in this jurisdiction that we must decline to further consider it.

The contention of defendant in error, that facts are not sufficiently pleaded to entitle the plaintiff to recover under this rule, is not justified by an examination of the pleadings.

The judgment is reversed and the case remanded.

MUSSER, C. J. and GABBERT, J., concur.