[No. 7791.]

## DENVER & RIO GRANDE RAILROAD COMPANY V. ELLIOTT.

1. RAILWAY COMPANY—*Operating Upon the Tracks of Another Company,* owes to the employees of the latter, engaged in the performance of their duties, the same care which it owes to its own employees under like circumstances. (33.)

2. —— *Servants Employed Upon the Track,* must keep such a lookout for the approach of trains as a prudent man would in like case; but they are not under duty to pay the same strict attention to the possible approach of a train as one who enters upon the tracks, not under any call of duty; and whether one so employed is guilty of negligence in failing to note the approach of a train is generally for the jury. (34.)

The evidence examined and the alleged contributory negligence of the injured held properly submitted to the jury. (39.)

3. —— *Duty Towards Trackmen.* It is the duty of a railway company to exercise reasonable care, in the operation of its trains, to avoid injury to section men, and others whose duties require their presence upon the track. (35-39).

The deceased, a section foreman employed in the yards of another company where defendant operated its trains, was run down and killed by one of defendant's trains. There was evidence tending to show that the crew of defendant's train knew in advance, or had reason to believe, that deceased would be working at the place where he was at the time of the accident; that the conductor and one brakeman had left the train; that it was backing, and no one was at its rear; that another train was moving upon an adjacent track, and that no signal whatever was given by defendant's train. *Held* that the question of defendant's negligence was properly submitted to the jury; that the evidence presented a proper case for the application of the doctrine of Last Clear Chance. (39.)

*Error to Fremont District Court.* Hon. CHARLES A. WILKIN, Judge.

Mr. E. N. CLARK, Mr. J. G. MCMURRAY, for plaintiff in error.

Mr. JAMES T. LOCKE, Messrs. BOTSFORD, DEATHERAGE & CREASON, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court.

The defendant in error was awarded $3,000 damages for the death of her husband, caused through the alleged

negligence of the employes of the plaintiff in error in the operation of one of its trains. The deceased was a section foreman in the employ of The Atchison, Topeka & Santa Fe Railway Company. A part of his duties was to look after and keep in repair the main side-track, or what is termed the lead-track, and several other tracks leading therefrom, of the latter company, at Portland, in Fremont County. There were six or seven side-tracks leading from this lead-track into the yards of The Colorado Portland Cement Company's works at Portland. These tracks were not very long, and all ended in the yards of this company; that is, they had no outlet at the other end, so that trains going onto them from the lead-track had to return the same way. The plaintiff in error had a side-track from its main line which also ran through the town of Portland, whereby it connected with this lead-track of the Santa Fe Company. It also had arrangements with the Santa Fe Company whereby it had the right to go upon this lead-track and its other side-tracks leading therefrom, in order to receive and deliver cars, and do other switching in connection therewith. In pursuance of this arrangement, upon the day of the accident, a train of the plaintiff in error, consisting of at least an engine and caboose, with an engineer, fireman, conductor and two brakemen, came from its tracks over onto the lead-track of the Santa Fe, for the purpose of doing some switching in the Portland yards, and when upon this lead-track they ran into the yards of the cement company, turning in on what is called track No. 3, which ran along the side of what is termed the stock room of the cement company. When they went in they had three or four cars in front of the engine, with the caboose in the rear. At this time the deceased, with two section men, was working upon this lead-track some two hundred feet from where track No. 3, running into the cement works, leaves the lead-track. It is in dispute as to whether or not all the trainmen saw them as they went in; it is a fair inference that they did, as there

is evidence that they had been working there ever since 7 o'clock that morning, and had worked there the day before. The engineer states he had been working over there an hour and forty minutes before going on this track, and that he had seen the deceased adjacent to the track at the point where he was struck. The accident occurred some time during the forenoon of November the 6th, 1909. There is also evidence that this crew was switching on these tracks the day before, and that the engineer had cautioned the deceased about the carelessness of his men being upon the tracks. After going into the cement yards on track No. 3 it appears that the crew coupled onto six more cars, at the stock house, and then proceeded to back out, pushing the caboose in front of the engine. Just how long they remained upon this track No. 3 is not disclosed. It was evidently not very long. It appears that after they got to the stock house the conductor and one brakeman, if not both, went forward to assist in the couplings, and when it started to back out, the conductor and one brakeman left the train at about the point where they had made the couplings, and proceeded to go north, while the train was backing out east; they evidently were going to another sidetrack in the yards, north of this one. The second brakeman got aboard the train about four or five cars behind the engine, thus providing no one at the time upon the end of the train the way it was backing. There is evidence that no whistle was sounded, or bell rung, or other signal given while it was thus backing out. The main line of the Santa Fe runs parallel with this lead-track, being about ten feet apart, and at the time the accident happened, when this train was being backed east upon the lead-track, a Santa Fe freight train, with about twenty cars, was going west upon the main line. It, of necessity, made considerable noise. The two section men who were with the deceased did not testify. Two eye witnesses to the accident, who were about three hundred fifty yards away, and about forty feet higher than the track, testified that when they

first saw the train it was backing at the rate of seven or eight miles an hour; that for two or three minutes before he was struck, the deceased was stooping over toward the east, working at something close to the left rail, as you go east, and between them; that when one of the witnesses first saw him in this position the train was from seventy-five to one hundred yards away; that from that time to the time he was struck there was no ringing of the bell or blowing of the whistle, and that they heard none before then; that there was no one on the caboose or rear end of the train the way it was going; that there was a slight curve in side-track No. 3 at and near where it connects with the lead-track, and near where the accident occurred; that the deceased was struck while in a stooping position where he was working, from which he received the injuries which resulted in his death the next day. There is no direct testimony that any of the train crew saw the deceased in the dangerous position after they started to back out of the yards. Their evidence is that they did not. It is debatable whether the engineer could have seen him from his place in the engine, even though he were looking, upon account of being on the outside of the curve when the engine was backing, pushing the caboose in front of it. He does not say, however, that he was looking in that direction when the accident happened. It is not claimed that the fireman could not have seen him, had he been looking in that direction, but he states he was not looking that way, but was looking in the other direction, where he says he was receiving the signals from the trainmen. Just what signals were to be received or expected after the couplings had ceased, and the train started to back out east, and after the conductor and one brakeman had left the train, and the other had got aboard about half way back, he does not say; but they were all positive in their statements that they did not actually see him in this perilous position—that is, made perilous upon account of the approaching train. There is no testimony

as to the exact length of time the deceased was in this position. One of the witnesses states, in substance, that he had changed his position within two or three minutes. There is no evidence when he made this change whether or not he looked to see if the train was returning. It is conceded he was familiar with these tracks, and knew the train must come out the way it went in.

For convenience we will hereafter refer to the parties as designated in the trial court.

Two contentions are presented to secure a reversal. The first pertains to the instructions given upon the theory that from all the evidence it was a question of fact for the jury to determine whether the defendant was guilty of negligence in the operation of its train, or in failing to give warning, etc., and whether the deceased was guilty of contributory negligence.

Counsel insist that the deceased was guilty of contributory negligence as a matter of law. We cannot so hold. The deceased was a section foreman in the performance of his duties. He was where he had a right to be, and the defendant company owed him the same duty which it owes to its own employes, under like circumstances.

*McMarshall v. Chicago, R. I. & P. Ry. Co.*, 80 Iowa 757, 45 N. W. 1065, 20 Am. St. 445. Ergo, his duty in looking out for his safety upon account of trains, etc., was no greater than it otherwise would have been had this been a Santa Fe train.

In vol. 23, American and English Encyclopedia of Law (2nd ed.), at pages 765-768, in commenting upon the question of contributory negligence in failing to keep a diligent lookout while approaching, being or walking on, or otherwise in connection with railroad tracks, at page 768, it is said:

"Nor does the principle apply to employees whose duties require their presence upon the track, the performance of which duties necessarily precludes their paying the strictest

attention to the approach of trains.. Whether a person in such a situation is guilty of negligence in failing to note the approach of a train is generally a question of fact to be determined by the jury, in view of all the circumstances."

Numerous cases are cited to sustain this conclusion. We think it the correct rule, and the one that should be applied to the facts in this case, and that the question of contributory negligence of the deceased was properly submitted to the jury. As was said in *Sagara v. Chicago, R. I. & P. Ry. Co.*, 58 Colo. 236, 144 Pac. 881, 882.

"Without doubt, it was the duty of the plaintiff to have kept such lookout for the approach of trains as is consistent with the duty of a prudent man similarly situated."

But this must be tested by the state of facts presented as disclosed by the plaintiff's testimony, viz.: that there was only one train in these yards at the time; that he had a right to assume that the crew knew he was working there; that ordinarily he could hear the approach of this train without signals; that he could also hear its bells and whistles, at any time, had they been blown or rung; that he had changed his position within two or three minutes before he was struck. There is no testimony to show that he did not look when he made this change. It must be conceded that he did not know the exact time the train would return. Under such circumstances, the question of his contributory negligence was a question of fact for the jury, and not a conclusion of law for the court. Other cases which sustain this conclusion are: *Smith v. Southern Pac. Co.*, 58 Or. 22, 113 Pac. 41, Ann. Cas. 1913A, 434; *Schulz v. Chicago, M. & St. P. Ry. Co.*, 57 Minn. 271, 59 N. W. 192; *Shoner v. Penn. Co.*, 130 Ind. 170, 28 N. E. 616, 29 N. E. 775; *Tubbs v. Michigan Cent. R. Co.*, 107 Mich. 108, 64 N. W. 1061, 61 Am. St. Rep. 320; *Freeman v. Ill. Cent. R. Co.*, 107 Tenn. 340, 64 S. W. 1; *Ominger v. New York Cent. & H. R. R. Co.*, 4 Hun (N. Y.) 159; *Murran v. Chicago, M. & St. P. Ry Co.*, 86 Minn. 470, 90 N. W. 1056; *Comstock v. Union Pacific Ry.*

*Co.,* 56 Kan. 228, 42 Pac. 724; *Crowley v. Burlington, C. R. & N. R. Co.,* 65 Iowa, 658, 20 N. W. 467, 22 N. W. 918; *Ind., Ill. & Iowa Ry. Co. v. Otstot,* 212 Ill. 429, 72 N. E. 387; *Collins v. New York, N. H. & H. R. R. Co.,* 55 N. Y. Super. Ct. 31.

It is claimed that there is no evidence of negligence by the employees of the defendant company in the operation of this train; also, that they owed no duty to the deceased in this respect, namely, that it was his duty to at all times look out for his own safety, and not the duty of those in charge of the train to look out for the trackmen at all. We are of opinion that this contention goes too far, and that, as said by the Supreme Court of Minnesota in answer to the contention that a railway company, when operating its trains, owes a sectionman no duty at all, except to avoid wanton and wilful injury to him, "that such is not the law." *Murran v. Chicago, M. & St. P. Ry. Co.,* 86 Minn., 470, 90 N. W. 1056.

In *Erickson v. St. Paul & Duluth R. Co.,* 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786, it was held that the company owed the workmen, engaged in grading a new track alongside the main line, the duty of active vigilance in giving them proper signals of the approach of trains.

In *Savannah & Memphis R. Co. v. Shearer,* 58 Ala. 672, the defendant corporation was backing its train, pushing passenger and box freight cars ahead of the engine. There was no brakeman or other person on these cars or elsewhere in order to keep a lookout ahead. This was within the limits of the City of Opelika; the plaintiff's intestate was walking on the track in the direction the train was moving, was overtaken by the train, run over and killed. Held, the company was negligent.

In *Union Pacific Ry. Co. v. Elliott,* 54 Nebr. 299, at page 305, 74 N. W. 627, it is said:

"Irrespective of a statute, the starting or running of a switch engine in a switch yard filled with a net-work of

tracks, upon which cars and engines are constantly moving and in which yardmen are constantly at work, without the ringing of a bell or the blowing of a whistle, is evidence of negligence."

In *Payne v. Missouri Pac. Ry. Co.*, 105 Mo. App. 155, 79 S. W. 719, it was held that where a party is rightfully on the railroad track, to the knowledge of the engineer, it becomes his duty to keep a vigilant lookout, and if by so doing he could have discovered such party in time to have avoided the collision, the railroad company is liable. It was also held that even though the engineer uses every care to avoid striking a party rightfully on the track, after he is discovered, yet if the engineer's negligent omission to have a headlight burning was the cause of his failure to discover such parties sooner, thereby rendering it impossible to avoid the collision, the company is liable.

In *B. & O. R. R. Co. v. State*, 33 Md. 542, it was held if the killing resulted directly from the want of ordinary care and prudence on the part of the agents of the company, namely, in that case, in not giving the proper warnings to its employes of the approach of trains, that the plaintiff is entitled to recover.

In *Cooper v. The L. S. & M. S. Ry. Co.*, 66 Mich. 261, 33 N. W. 306, 11 Am. St. 482, it was held that it is gross negligence in a railroad company to back its trains across the main street in a village without a brakeman at the rear end as a lookout, and in readiness, in case of danger, to apply the brakes and thus prevent collision or accident.

In *Indiana, Illinois and Iowa R. Co..v. Otstot*, 212 Ill., at page 433, 72 N. E. 389, in commenting upon the backing of an engine in the yards without giving warning, the court said:

"There is evidence that at the time of starting the engine south, after the tracks were cleared, just before the accident, Mumaw knew that these section hands were working on the track at switch No. 4, and that he started the

engine and ran it over the distance intervening the point at which it had been stopped, just south of Livingston street and the point where it struck the appellee, without ringing the bell or sounding the whistle or giving other warning of its approach. From this evidence the jury might well infer negligence on the part of the appellant."

In *Farley v. C., R. I. & P. Ry. Co.,* 56 Iowa 337, 9 N. W. 230, it was held that a conductor and brakeman, who were in the cupola of a detached caboose with two cars, were negligent in not sooner discovering the fact that they were detached, and in not being upon the top of the cars where they could control their motions and give warning of danger at the time of the accident.

In *Tobey v. B., C. R. & N. Ry. Co.,* 94 Iowa 256, 62 N. W. 761, 33 L. R. A. 496, it was held that kicking cars within a city, at illegal speed, with no one at hand to check them or give warning to those working on parallel tracks, is negligence *per se.*

In *Thomas v. The Chicago, M. & St. P. Ry. Co.,* 103 Iowa 649, 72 N. W. 783, 39 L. R. A. 399, it was held that employes operating a train are bound to keep a lookout for persons on the track with the license or invitation of the company, express or implied, and to exercise ordinary care to discover the presence of, and avoid injuring, such persons.

In *Arenschield v. Railway Co.,* 128 Iowa 677, 105 N. W. 200, it was claimed that the death of the deceased was occasioned by the negligence of defendant. The seventh specification of such negligence was that the engine was run backward at a high, reckless rate of speed down the grade of the coal chute track over the intestate, without giving any warning of its movement by sounding the whistle or ringing the bell; and eighth, that the engine was being thus operated without a lookout and without a watchman upon the crossing, in violation of the published rules of the defendant governing the management of the yard and the

conduct of its employes. The question of negligence in all these respects was submitted to the jury, and its finding in favor of the plaintiff was not disturbed. The deceased was an employe, to-wit, an engineer.

In *Smith v. Southern Pac. Ry. Co.*, 58 Oregon 22, 113 Pac. 41, Ann. Cas. 1913A 434, it was held that it is the duty of a railroad engineer to closely observe men working on the track, and the moment he has reason to believe that one of them is not going to get out of the way in time to avoid danger, to promptly use the appliances at his command to check or stop the engine so as to avoid injury.

In *International & G. N. R. Co. v. Villareal*, 82 S. W. (Texas), 1063, it was held the duty of the engineer to give a warning to section men of his approaching train by the blowing of the whistle or the ringing of the bell.

In *St. Louis & Southwestern Ry. Co. v. Jacobson*, 28 Texas Civ. App., p. 150, 66 S. W. 1111, it was held that as to persons rightfully on a railroad track, the operators of a train owed a general duty of a lookout, and must exercise ordinary care to discover them, as well as to also avoid injuring them after the peril is discovered.

Sections 4488 to 4500, inclusive, vol. 4, Thompson on Negligence, clearly disclose that it is the duty for signals to be given to trackmen as well as certain other employes of the approach of trains, engines, etc., whether going backward or forward. This, of necessity, carries with it, generally speaking, the duty of someone to be on the lookout for them in the direction the train is going, for without this precaution no such signals could be given at the times required unless kept up continuously.

Without approving or disapproving the conclusion reached in all the authorities above cited, we are of opinion that under the facts of this case the question of the negligence of the defendant was properly submitted to the jury.

There is testimony from which the jury could find that the train crew knew, or had good reason to believe, that the

deceased would be working about where he was when they came out; that after making the couplings at the stock-house, the conductor and one brakeman left the train and started to walk north, as it started to back out east; that the other brakeman got aboard about half-way back, and that neither he nor the engineer nor fireman was looking in the direction the train was backing, within a reasonable time before or when the accident occurred; that no one was on the end of the train the way it was going; that at this time there was a Santa Fe freight train going west on the main line which parallels this track about ten feet from it; that this train on the main line was making the usual noises which are to be expected from a train of that kind, and that the defendant company's train did not blow its whistle, ring its bell, or give any warning to the deceased of its approach. Under these circumstances the trial court was correct in refusing to instruct as a matter of law that the defendant was not guilty of negligence.

The second contention pertains to the instruction given concerning the last clear chance doctrine. It is claimed that the giving of this instruction was error; we cannot agree with this conclusion. Its principles are well settled in this jurisdiction, and we do not think the court committed error in applying it to the facts in this case. *D. & R. G. R. R. Co. v. Bauffehr*, 30 Colo. 27, 69 Pac. 582; *Catlett v. Colo. & So. Ry. Co.*, 56 Colo. 463, 139 Pac. 14; *Sagara v. C., R. I. & P. R. Co.*, 58 Colo. 236, 144 Pac. 881; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; *Oliver v. Denver Tramway Co.*, 13 Colo. App. 543, 59 Pac. 79; *Denver & Berkeley Park Rapid Transit Co. v. Dwyer*, 20 Colo. 132, 36 Pac. 1106; *Deans v. Railroad Co.*, 107 N. C. 686, 12 S. E. 77, 22 Am. St. Rep. 902; *Hinzeman v. Mo. Pac. Ry. Co.*, 182 Mo. 611, 81 S. W. 1134; *Sullivan v. Mo. Pac. Ry. Co.*, 97 Mo. 113, 10 S. W. 852; *Morgan v. Wabash Ry. Co.*, 159 Mo. 262, 60 S. W. 195; *Schlereth v. Mo. Pac. Ry. Co.*, 115 Mo. 87, 21 S. W. 1110; *Indianapolis Traction &*

*Terminal Co. v. Kidd,* 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942.

Perceiving no prejudicial error, the judgment is affirmed.

*Affirmed.*

Decision *en banc.*

Mr. JUSTICE WHITE dissents.

Mr. JUSTICE TELLER not participating on petition for rehearing.