Chicago & Western Indiana Railroad Company v. Wiley W. Mills, Administrator.

Gen. No. 12,568.

1. ASSUMED RISK—*negligence of lessee company within doctrine of.* A person entering into the employ of a railroad company assumes as one of the risks of his employment the risk of injury arising from the negligence of a lessee railroad company.

2. CONTRIBUTORY NEGLIGENCE—*when track workman guilty of.* Held, that an employe of a railroad company engaged in working upon its tracks was guilty of contributory negligence in failing

to watch for the approach of trains from both of the directions from which trains might come.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed, with finding of facts. Opinion filed July 13, 1906. Rehearing denied March 22, 1907.

**Statement by the Court.** This is an appeal by the defendant from a judgment for $5,000 recovered by the administrator of the estate of William A. Livings, deceased, in an action under the statute for wrongfully causing the death of plaintiff's intestate.

Defendant, a terminal railroad company, owned and maintained, but did not operate, a large number of railroad tracks in its terminal yard in Chicago. Between Sixteenth and Eighteenth streets it had, among others, four main tracks numbered from the east, 1, 2, 3 and 4. Track 1 was used for north-bound passenger trains, track 2 for south-bound, track 3 for north-bound freight trains and track 4 for south-bound. These tracks were leased to and used by a number of railroad companies, one of which was the Chicago & Erie. The defendant operated no trains, but maintained the roadbed, including interlocking switch plants, and the deceased at and for two years before his death was employed by the defendant as a repairman in said yard, and his duties took him over said tracks from Fifteenth street on the north to Nineteenth street on the south. The freight yard of the Chicago & Erie Company extended north from Fourteenth street.

For several years before the death of Livings, the Erie freight train which left Fifty-first street at one P. M. brought into Chicago as the front car or cars of said train one or more milk cars, which were taken to the Dearborn station and attached to a train which left that station at 3:15 P. M. The custom during this time was to stop this train when the engine was at the south line of Seventeenth street, which was not

opened through the yard, cut off the milk cars, which were then hauled north on track 3 by the train engine to the Dearborn station.   After the engine and milk cars passed the switch leading from track 3 to the Chicago & Erie freight yard, the Chicago & Erie yard engine would back out of that yard on to track 3 and south on that track to the train from which the milk cars had been cut off.   The engine was then coupled to that train and hauled it north over track 3 and the track leading from that track into the Chicago & Erie freight yard.   Quite often on Sundays and occasionally during the week it happened that the milk cars were the only cars in the train above mentioned, and then the train ran through to the Dearborn station without stopping at Seventeenth street, but as often as four or five days in each week the train was stopped at Seventeenth street, the milk cars cut off and taken to the Dearborn station by the train engine, and the remainder of the train taken to the Chicago & Erie freight yard by the yard engine, as above stated.   The freight train did not arrive at the same time each day, but usually arrived between two and three P. M., rarely later than 2:45.

There was during the time the deceased was so employed by the defendant an iron box between tracks 3 and 4, a short distance north of Seventeenth street, which contained the movement plates of No. 18 "derail" of the interlocking switch plant of the defendant, and one of the duties of the deceased was to oil said movement plates and keep the same and the other parts of the "derail" clean.

January 12, 1903, the freight train stopped at the usual place about 2:50 P. M., the milk cars were at once cut off and hauled to Dearborn station over track 3 by the train engine.   Immediately after the engine and milk cars passed north on track 3 the yard engine of the Chicago & Erie Company backed out of the freight yard of that company at Fourteenth street on to track 3 and south on that track, for the purpose of

hauling to the Erie freight yard the cars left on that track when the milk cars were cut off. The deceased was at work at the iron box above mentioned, either oiling the plates or sweeping, and in some way went upon track 3, or so near to that track that when the yard engine came abreast of the box the deceased was struck by the engine, run over and killed. It does not appear when deceased went to the box near which he was killed, whether before or after the train engine went north with the milk cars.

The north end of the front car of the train which was standing on track 3 was about 200 feet south of the iron box, and there was nothing to obstruct the view of the train from the box. Nor was there anything to obstruct the view from the box of the approaching yard engine for a distance of more than five hundred feet north from the box.

W. O. Johnson and George C. Gale, for appellant.

Frank A. Rockhold, for appellee.

Mr. Justice Baker delivered the opinion of the court.

In Clark v. C., B. & Q. R. R. Co., 92 Ill. 43, it was held that the negligence of the employes of the lessee railroad company is one of the risks of the service which is assumed by an employe of the lessor railroad company. In this case, it is undisputed that the defendant company owned the tracks in question; that it leased to the Chicago & Erie Company the right to use said tracks jointly with certain other railroad companies; that deceased was employed by the defendant company in its yard, to repair and keep in order said tracks and the switch plants connected therewith; that while engaged in the performance of his duties he was killed by an engine of the Chicago & Erie Company.

The declaration alleged and appellant contends that he was killed through the negligence of the servants

of the Chicago & Erie Company in charge of said engine. But the negligence of the servants of that company, a lessee of defendant company, was, under the decision in the case cited, a risk assumed by the deceased when he engaged in the service of the defendant, and the decision in that case must, we think, be held conclusive against the right of the plaintiff to recover in this case.

Appellant also contends that deceased was guilty of contributory negligence. It is not shown when deceased went to the iron box near which he was killed— whether before or after the train engine with the milk cars passed north on track 3 to the Dearborn station. Deceased had two or more years' experience as a repairman in the yard of defendant within two blocks of the place where he was killed, and must be presumed to have known generally how trains were run in that yard. Nearly every day during that time and about the same time of the day there occurred in that yard, at the same place, precisely what occurred on the day of the accident. A Chicago & Erie freight train came from the south on track 3, stopped with the engine at the south line of Seventeenth street, one or more milk cars at the forward end of the train were cut off and hauled over track 3 north to the Dearborn station by the train engine. Immediately after the engine and cars passed north a yard engine of the Chicago & Erie Company backed out of its freight yard at Fourteenth street south on a track leading to track 3 to that track, and thence south on that track to couple to the cars left standing on said track and haul them north over track 3 and the track leading from track 3 into said freight yard.

If the deceased was at the box when the engine and milk cars passed north on track 3, then he knew from that fact that in a short time an engine would go south by said box on track 3 to haul the cars cut off from the north-bound freight train into the Chicago & Erie freight yard. If he came there after the engine and

cars had passed north, then there was standing within two hundred feet south of him on track 3 a train of freight cars with no engine attached to it, and this would show that the engine and milk cars had already been cut off from the freight train and gone to the Dearborn station, and that an engine in the usual course would soon come from the Chicago & Erie freight yard to haul the cars that were standing on track 3 north over that track to the Chicago & Erie freight yard.

In either case he knew, or if he had exercised reasonable care would have known, that an engine would soon pass south over track 3 to couple to the cars standing on that track two hundred feet south of the iron box where he was at work, to haul them to the Chicago & Erie freight yard.

The testimony of plaintiff's witnesses tends to show that the deceased worked with his face to the south, looking only to the south, until he was struck; the testimony of defendant's witnesses tends to show that, as the engine approached, he looked towards it, and then stepped on to track 3. Taking as true the testimony of plaintiff's witnesses, the deceased looked only to the south, although upon track 3 there was a string of freight cars two hundred feet south of him, without any engine attached, directly in the way of any engine or train coming north on that track.

In going upon or near to track 3 deceased was, therefore, in no danger from a train coming from the south on that track, but he had reason to apprehend from the circumstances, the fact that the freight cars without an engine attached were standing on track 3 south of him, from the fact that the custom was to send an engine south over track 3 to haul those cars to the Chicago & Erie freight yard, that an engine would soon come south on track 3 and it was his duty to watch for and guard against injury by such engine when it came, and the fact that track 3 was usually used as a north-bound track did not relieve him from that duty.

In The Belt Railway Co. of Chicago v. Skszypczak, 225 Ill. 242, the plaintiff, a track repairer, was at work at the intersection of the north-bound track of the Belt Company with the track of the Illinois Central Company. A south-bound train of the Belt Company stopped some distance north of the Illinois Central track, and the engine and a few cars were cut off from the train and proceeded south over the crossing to a water tank. While the engine was taking water, a switch engine placed some cars on the south-bound track behind the train engine. The train engine then backed north, was coupled to the cars which the switch engine had placed on the track, and backed, with the cars north of the engine, north on that track over the crossing. In passing over the crossing the north car struck the plaintiff and injured him. Plaintiff recovered a judgment, which was affirmed by this court and reversed by the Supreme Court, upon the ground that plaintiff (appellee) "was guilty of negligence in failing to keep a lookout for the approach of trains and engines from the south, and that such negligence directly contributed to the injury." In the opinion in that case it was said:

"Appellee had two or three years' experience as a track repairer. During this time he had frequently had occasion to observe the movement of trains. He was well aware of the danger of being upon a railroad track, and that it required constant vigilance to avoid injury. He had observed a train approach from the north on the west Belt track, and had seen the engine drawing that train and a few cars proceed south over the crossing, leaving the remainder of the train standing on the track a few hundred feet north of the crossing. He had observed the engine at a water tank half a mile south of the crossing. Any person of ordinary intelligence—and it must be presumed that appellee was such—who knew anything about the operation of trains, must have known that the engine would probably return from the south for the remainder of the

train instead of leaving it on the main track in the way of other trains, which, from the evidence, appear to pass there at frequent intervals. At least, the circumstances were such as to put appellee upon his guard to watch for the return of that engine over the track upon which he was working.

"There is no evidence of the exercise of any care whatever on the part of appellee to avoid being struck by the engine and cars which were approaching the crossing from the south on the west Belt track. All the evidence in reference to the exercise of care is confined to that used by appellee to avoid injury from a train or engine approaching from the north, although a string of freight cars, without any engine attached, was standing a few hundred feet north of him on that track, in plain view and directly in the way of any other train which might be coming from the north on that track. The fact that most of the trains from the south approached the crossing on the east Belt track certainly did not relieve appellee of the duty of watching for one of the occasional engines or trains that might be coming from the south on the west Belt track at any time."

This language is peculiarly applicable to the facts of this case. Here the deceased, if he observed any care, must have known that an engine would probably come from the north over track 3 for the remainder of the train which the train engine had left on that track, instead of leaving it on that main track in the way of other trains, especially in view of the fact that track 3 was used as a main north-bound freight track by several railroad companies.

In that case plaintiff was tightening up or replacing bolts in a rail of the track upon which the car ran that injured him. In this case, it was shown that it was necessary for the deceased, in order to do the work in which he was engaged, to go upon track 3, or so near to that track as to be injured by an engine passing over it.

The circumstances of this case were, in our opinion, quite as clearly such as to put the deceased on his guard to watch for the coming of an engine on track 3 from the north, as were the circumstances in the case cited, "such as to put appellee on his guard to watch for the return of the engine over the track upon which he was working."

The case is not, we think, to be distinguished from the Skszypczak case, but is to be distinguished from The Indiana, Iowa & Illinois R. R. Co. v. Otstot, 212 Ill. 429, upon which appellee relies in this case, as did the appellee in the Skszypczak case. There the plaintiff was set to cleaning switch points in the extensive railroad yards of the defendant at Streator. He knew that there was an engine working in the yards south of him and worked with his face to the south, so that he could see that engine if it came towards him. He did not know that there was an engine north of him, and yet looked around every one, two or three minutes to see whether an engine was approaching from the north, but did not see the engine which came from the north until it struck him, and it was held that under such circumstances the question whether the plaintiff was in the exercise of due care was one for the jury. Here the deceased either wholly failed to look to the north, or, if he did, as defendant's witnesses testified, look to the north, he failed to take any steps to get out of the way of the engine. We are unable to reach any conclusion from the evidence other than that the deceased was guilty of negligence in failing to keep a lookout for the approach of an engine on track 3 from the north and that such negligence directly contributed to his injury and death.

The judgment of the Superior Court will be reversed, with a finding of facts.

*Reversed, with finding of facts.*