## Chicago Union Traction Company et al. v. Sarah Scanlon.

### Gen. No. 13,363.

1. NEGLIGENCE—*when declaration sufficiently charges, against traction company.* Held, that the declaration in this case sufficiently set up a cause of action in favor of a pedestrian injured at a street crossing.

2. EVIDENCE—*when opinion as to rate of speed competent.* A witness who has had experience in judging rates of speed is competent to testify as to the rate of speed at which a car was going at a particular time.

3. PERSONAL INJURIES—*what competent upon question of.* A family physician and a lay witness acquainted with the facts are both competent to testify as to whether in their opinions a child who had received an injury has grown in intelligence with her years.

4. VERDICT—*when not excessive.* A verdict of $3,600 rendered in an action for personal injuries is not excessive where it appears that the plaintiff, a child, had been severely and permanently injured, especially with respect to arrested mental development, change of character, etc.

5. INSTRUCTIONS—*need not repeat.* The court may properly refuse an instruction the substance of which is embodied in another given.

6. INSTRUCTIONS—*upon what should be predicated.* Instructions upon the question of due care are properly refused where not predicated on the finding by the jury that the hypothetical acts complained of were negligent upon the part of the plaintiff considering her age, knowledge and experience.

Action in case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed October 3, 1907.

JOHN A. ROSE and ALBERT M. CROSS, for appellants; W. W. GURLEY, of counsel.

RUSSELL M. WING, FRED M. WING and FRED W. BENTLEY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from a judgment of the Superior Court of Cook county for $3,600. It was obtained by the appellee, the plaintiff below, against the appellants, defendants below, on a verdict in her favor for personal injuries suffered by her from an electric car operated by the Chicago Union Traction Company under a lease or agreement from the West Chicago Street Railroad Company.

Originally a declaration in four counts against the Chicago Union Traction Company alone was filed, the second count of which was afterward amended. To this the Chicago Union Traction Company pleaded the general issue. Thereafter the plaintiff procured an order by which all papers and proceedings in said cause were "thereby amended" by making the West Chicago Street Railroad Company an additional party defendant. By the same order leave was given to the plaintiff to file additional counts to the declaration instanter. Five additional counts were accordingly filed, declaring against both defendants, and at the same time the plaintiff filed a statement that she amended the "praecipe, summons and declaration" in said cause by adding the West Chicago Street Railroad Company as a party defendant. Thereupon the West Chicago Street Railroad Company and the Chicago Union Traction Company separately pleaded the general issue to the additional counts and each of them. When the trial came on it seemed to be conceded by both parties that the trial judge was right in perhaps inadvertently stating that there was no declaration existing in the case against the two defendants except the five additional counts. The cause was at all events tried on that theory, and it. is not claimed by plaintiff that the original declaration was not abandoned. Of the five additional counts three—the first, third and fourth—were withdrawn from the jury by the trial judge at the close of the evidence. He instructed them that there was no evi-

dence which under the law could be applied to the charge of
negligence contained in them, but that as to the second and
fifth counts it was for them to determine from the evidence
whether or not the plaintiff had proven the material allega-
tions in either of said counts by a preponderance of the evi-
dence. The two counts thus submitted to the jury were
very similar. Each charged that the West Chicago Street
Railroad Company on September 10, 1900, owned an elec-
tric street railway running east and west on Taylor street in
Chicago, and that the Chicago Union Traction Company, by
virtue of a lease, was operating a street car thereon; that
the plaintiff, in the exercise of ordinary care for her own
safety, was on that day walking on or along Taylor street
near the intersection of the same with Irving avenue; that
the car of the Chicago Union Traction Company was being
driven west along the north track of the street railway on
Taylor street at that place; that it was the duty of the Chi-
cago Union Traction Company, by its servants operating
said car, in some manner to warn or signal to plaintiff of
the approach of said car in time for her to move away in
safety from the place where she was walking near the tracks;
that, neglecting said duty, the Chicago Union Traction Com-
pany by its servants negligently drove the car along said rail-
way without giving any such warning or signal, and ran
into her and knocked her down with such violence that her
skull was fractured, to her great and permanent injury.
The fifth count differs from the second only in containing a
specific allegation that as the plaintiff was walking along or
near the tracks she was visible to the servants of the traction
company operating said car, and was seen by them, or would
have been seen by them had they exercised reasonable dili-
gence in maintaining an outlook along and upon the track
ahead of their car.

These counts are sufficient as a statement of the cause of
action, which, as hereinafter pointed out, we think was sus-
tained by the evidence. After the verdict of the jury a mo-
tion for a new trial and a motion in arrest of judgment were

denied by the court below, and this appeal taken by both defendants.

In this court, under sufficient assignments of error, it is argued: first, that the verdict and judgment were against the weight of the evidence, in that negligence on the part of the defendant the Chicago Union Traction Company was not proven, and that contributory negligence on the part of the plaintiff was proven; second, that the trial court erred in refusing certain instructions requested by the defendants; third, that improper evidence was admitted for the plaintiff; and fourth, that the damages allowed by the jury were excessive.

After a careful consideration of the entire record in this case we are of the opinion that the jury may reasonably have found the facts to be these:

On September 10, 1900, a cement sidewalk was being put down in front of a grocery store on the northwest corner of Irving avenue and Taylor street. There were piles of material—sand and cinders—between the north car track and the grocery store, extending west from it. Around these a low barricade or fence rail had been placed. Between that and the car track one or two planks running east and west had been laid for people to walk on. A platform had also been erected at the grocery store entrance and one or more planks, with a railing on each side, laid for a gangway from the grocery store door over the sidewalk curb into the street, and near to the railway track—too near to make it safe to walk directly west from the end of it while a car was passing. Obviously special care was demanded of street cars as they passed this location to avoid running over people.

On the evening of the day in question, at about seven o'clock, the plaintiff, a girl about thirteen years old, met two schoolmates named Cunningham, sisters, one, May, also about thirteen years old, and the other, Ethel, about ten years old, west of Irving street, going on an errand to the grocery store in question. She joined them and together they went to the store and made their purchase, passing out

into the street near the grocery, around the barricade enclosing the cinders, and up the gangway into the store. Having made the required purchase, the girls came out of the store and walked down the gangway plank or planks to the street, the younger Cunningham girl first, her sister following her, and the plaintiff last. As she came out the plaintiff saw no car opposite and none for a short distance to the east, toward which she looked. There was an electric light to the east of Irving avenue. She heard no bell or sound of an approaching car. The children filed off the gang plank in the order named, turned west along the plank or planks between the barricade in the street and the car track, when a car came from the east across Irving avenue running west on Taylor street at a high rate of speed, without ringing a bell or showing a headlight. The second and older Cunningham girl screamed and pulled her sister ahead of her away from the car and towards and perhaps over the barricade and onto the cinder heaps. The plaintiff had then walked west some little distance from the end of the gangway leading down from the grocery store. The car was an open one with a fender ahead and a running board along the side. The fender passed her, but the end of the running board on the north side of the car, which stuck out several inches further than the fender, caught her on the leg and threw her over backward, her head falling against the running board of the car or against the ground. Her skull was thereby fractured.

At the time the motorman was not at his post, and did not have his hand on the controller, but had his face turned to the south and was helping the conductor put down the side bar on that side of the car, the conductor attending to the catch at one end and the motorman at the other. The end of the run where the side bars had to be changed for the return trip was three blocks farther west at the corner of Taylor street and Western avenue.

If the jury did believe from the evidence the facts to be as we have outlined them, they certainly were justified in rendering a verdict against the defendants.

C. U. T. Co. v. Scanlon.

The defendants challenged this version of the accident in almost every essential particular. The testimony offered by them contradicts the statement of some of plaintiff's witnesses that there was no bell rung and no headlight, and that the car was running at a high rate of speed. The motorman swears that he rang the bell for the street intersection, and that there was a six inch 32 candle power electric light at the head of the car, and that he was not running at more than eight miles an hour. He denied also that he was at work on the side bar, or that it was changed until the car reached Western avenue. But he swore with at least equal positiveness that there was no sidewalk building at this place, but that the street was being paved; that the girls did not come out on any gangway from the grocery shop, but were, when he first saw them, running on the sidewalk, and were running straight south toward the tracks, and that the sidewalk was entirely clear. This statement about a very material matter was not considered correct even by the defendants' counsel, who make no claim of this kind. The motorman also testified in his direct examination that the plaintiff fell before she was hit, but in his cross-examination that she was struck before she fell.

In one respect—and that an important one—we think his testimony confirms that of Agnes Lynch. When asked what part of the car struck the girl he answered, "Between the front trucks and the fender on the running board." In the other particulars we do not think that his testimony outweighs that of Agnes Lynch and George W. Cunningham, eyewitnesses of the accident. The account which Miss Lynch gave of the way in which the accident happened is in itself natural and consistent, while the contention of the defendants, founded on the testimony of the motorman and on the cross-examination six years after the event of girls who were in the confusion and excitement of the accident, and no one of whom was over thirteen years old at the time, that the plaintiff ran out of the shop, carelessly and without any apparent cause, straight into the side of a car, and thus had her skull fractured, does not appeal to us as in itself

probable. There was abundant evidence that the plaintiff herself had suffered seriously in her mentality as the result of the accident, and such contradiction or confusion as appears in the cross-examination of her and of the Cunningham girls was no greater than might have been, under the circumstances, expected. When their testimony is analyzed and compared in a reasonable and impartial manner, it does not seem to us inconsistent, in its general effect and result, with that of Miss Lynch, who gives the clearest account of the occurrence. Nor does Mr. Barry's testimony outweigh it in any essential particular.

We cannot disturb the verdict or judgment as against the weight of the evidence.

The complaint made of the rulings in regard to the admission of evidence is devoid of merit.

George Cunningham was permitted, over objection, to testify that the car was running at a certain speed, according to his opinion. As the trial judge remarked, he "sustained the objection until the witness showed he was an expert messenger on the train to Cairo," and swore that he had experience in judging the rates of speed at which trains ran. Then the judge very properly "let him answer what the speed was."

Another objection, namely, that Cunningham was allowed to answer where the plaintiff was struck, although he did not testify that she "was struck by the car or that he saw her struck," is based on a mistake as to what his testimony was —a mistake which is shared by both counsel who argue the case here—for the appellee's brief says it is true that "George Cunningham did not actually see appellee injured." Reference to the record will show counsel that Cunningham nowhere says he did not see the accident, but that, on the contrary, when the court for a moment following the counsel for defendants, made the mistake of thinking the witness had so testified, the following colloquy occurred:

"The Court: I don't understand that this witness saw anybody struck. He heard a girl scream. If he saw anybody struck, ask him.

Mr. Wing: Did you see anybody struck?

A. I did see somebody struck and I heard a scream.

Q. Where was she at the time she was struck with reference to Irving avenue and Taylor street?

Mr. Guilliams: I object. There is nothing here to show she was struck.

The Court: He can answer. He says he saw a girl struck—now counsel asks, where was that?

Mr. Guilliams: The question assumes *somebody*—it might not have been—

The Court: No. Can't sustain that. You may answer the question."

It will be seen that the objection which the court could not sustain was not that which appellants' argument suggests, but the theory that at an accident occurring at just the place and time of the one under investigation, it might have been some other little girl, and not the plaintiff, that Cunningham saw struck by the car. Again in cross-examination the witness said that he saw *somebody* struck, the subsequent answer to the question, "You didn't see what occurred there at all?" "I didn't see anything about it at all," being very evidently based upon the belief, whether correct or mistaken, that he was being interrogated as to what occurred subsequent to the accident as to the care of the injured person. There was no error in the rulings on Cunningham's testimony.

It is insisted also that there was error in allowing Dr. Reynolds, the family physician, and also the plaintiff's sister, to testify whether in their opinion the plaintiff had grown in intelligence with her years. There was no error in this. It was not necessary that Dr. Reynolds should have been a specialist in mental disorders to testify as he did. He was a neighbor and friend. The sister had excellent opportunities for judging what she testified to, and, like Dr. Reynolds, gave facts before she stated conclusions. The opinion of the Supreme Court in N. Y. C. & St. L. R. R. Co. v. Luebeck, 157 Ill. 595–600, disposes of this objection.

The damages allowed are not excessive. We think the

evidence is entirely sufficient to prove that there was, as the result of this injury, extremely severe in itself, the much greater calamities of arrested mental development and change of character and disposition for the worse.

It is urged that the court erred in refusing certain instructions requested by the defendants. There were twenty instructions requested by the defendants, seventeen of which were given exactly or substantially as requested, and three of which were refused. The appellants contend, however, that these three instructions refused (numbered 4, 5 and 6) contained the theory of their case in its plainest and most direct form, and should have been given in order that the attention of the jury might have been focused on the point that even if the defendants were negligent in running the car against the girls, if they suddenly ran down in front of it, still that negligence was not charged in the declaration.

This theory of the defendants was, in our opinion, so far as it is borne out by the law, fully covered by the 16th, 17th, 18th and 20th instructions as given. The practice of multiplying instructions on the same subject has been condemned by the Supreme Court, and, as that court says in I., I. & I. R. R. Co. v. Otstot, 212 Ill., 429: "where a party thus offers two or more instructions embodying the same propositions in varying language, he will not be heard to complain because the court refuses the one the party considers the most important where the others are given. He could avoid this difficulty by requesting the giving only of the instruction which is most satisfactory to himself on that subject."

But there are other valid objections to the refused instructions besides the fact that what was proper in them was covered by others given. In themselves they would have been likely to mislead the jury. If, as counsel's argument would seem to indicate, any one of them was based on the theory that if the plaintiff was proved to be "hopping" or "running" instead of "walking" when injured, this would constitute a variance between the declaration and the evidence, it was erroneous for that reason. Under anything but

the most technical construction, the averment that a child was "walking on the street" means "proceeding on foot" in the manner common to children.   But we agree with counsel for appellee moveover in the position that the refused instructions were properly refused because they were not predicated, as they should have been to make them accurate, on the finding by the jury that the hypothetical acts complained of were negligent on the part of the plaintiff, considering her age, knowledge and experience.

We believe justice has been done in this case, and that there is no error in the trial shown by the record.

The judgment of the Superior Court is therefore affirmed.

*Affirmed.*