**George A. Hutchinson, Appellant, v. William Nettleton, Appellee.**

### Gen. No. 5,685.

1. DAMAGES—*physician's services.* In an action by a physician for services, the reasonable value thereof is for the jury to determine, and a verdict for $150 should not be disturbed where the physician charged $575 on his books and sued for $1,050; several physicians gave widely varying estimates concerning the value of the services; the physician who assisted had had thirty years' experience and testified that in his opinion defendant's back was dislocated and not broken and that he would not have used the cast placed thereon by the plaintiff; plaintiff forced himself into the case knowing that an older physician was desired, and there is evi-

dence that his treatment was violent and unskilful and caused great pain.

2. PHYSICIANS—*instruction as to skill required.* An instruction that a physician must bring to the case and exercise that degree of knowledge, skill and care which a good physician and surgeon would use under the circumstances is proper.

3. PHYSICIANS—*instruction concerning allowance for unskilful treatment in action for services.* A physician suing for services performed is not injured by an instruction which authorizes an allowance to defendant for pain caused by plaintiff's failure to use the skill of a good physician but which leaves the question of skill and of whether defendant suffered pain because of any lack thereof to the jury.

4. PHYSICIANS—*harmless error.* An instruction providing that before a physician could recover for certain services performed he must prove by a preponderance of the evidence that he was a regularly licensed physician and surgeon at the time cannot be held to have affected the verdict where, after oral proof of such license, the jury found for the physician.

5. INSTRUCTIONS—*statements of counsel as to.* A ruling that counsel cannot state to the jury the instructions he is going to ask and further that each party has offered instructions is correct, since so far as the jury is concerned the instructions are given as the court's view of the law and they should not be informed at whose request they are given.

Appeal from the County Court of Boone county; the Hon. WILLIAM C. DE WOLF, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

WILLIAM L. PIERCE and H. B. STEVENSON, for appellant.

BARNES & BARNES, for appellee; WILLIAM BIESTER, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the court.

Late in the forenoon of January 31, 1911, appellee, a carpenter and retired farmer, residing in Capron, Illinois, while working on a building near Capron, fell from a scaffold about nine or ten feet to the ground and was injured. Someone at the place where appellee was injured sent for appellant, a physician of

about two years' experience, residing in the same place. · He came and rendered some temporary aid and was told by appellee's family that his services were not wanted as they wanted a Doctor Johnson from Harvard, Illinois. Appellant informed appellee's family that if they needed his services, he would come back at any time and he went away. Dr. Johnson was called but was not at home and a Dr. Goddard came in his place. Dr. Goddard did not get there until about 2 o'clock. Shortly before Dr. Goddard arrived appellant was called again by a neighbor of appellee. On the arrival of Dr. Goddard he was told by appellant that he (appellant) was to treat appellee and that Dr. Goddard was only to administer the anæsthetic. Appellant made an examination of appellee's back and discovered, as he says, that the back was broken. He began making arrangements to reduce the fracture. To do so he procured two boxes, placed them on the table in such a position that one would be under the shoulders of appellee and the other one would be under the lower part of his back and the supposed fracture would be between. He then had Dr. Goddard administer the anæsthetic, placed appellee on the boxes, caused four men to manipulate his arms and legs back and forth, while appellee stood over the patient with his hands beneath the supposed fracture and lifted the body up and down several times, and, as he testified, he could distinctly feel the fracture reduced. He then placed several layers of cotton wadding next the body then a plaster cast around the body, and then a steel support or rod, and encased this in more plaster of Paris, and then put on wadding and kept appellee in this case for about five weeks and attended him from time to time. Appellee has now regained the use of his body and is fully recovered. A controversy arose between them over the amount of the bill. On May 15, 1911, appellant sued appellee in *assumpsit*, and filed a declaration containing the common counts and a bill of particulars for $1,050, $1,000 of which

was for performing the operation and $50 for medical services and supplies from January 31, 1911, to March 20, 1911, to which was interposed a plea of the general issue. A trial resulted in a verdict of $150 for plaintiff, his motion for a new trial was overruled, and judgment was entered on the verdict, from which plaintiff prosecutes this appeal.

Dr. Goddard, a physician of about thirty years' experience, who, on his arrival, examined appellee's back, testified that he did not discover any fracture and found what appeared to be, in his opinion, a slight dislocation between the eighth, ninth and tenth dorsal vertebræ. He testified that he would not have used the kind of a brace that appellant used; that he would have depended on the plaster of Paris cast; that the services rendered that day were reasonably worth from $50 to $100 based on the assumption that there might have been some dislocation and fracture. Dr. Johnson testified that, assuming appellee's injury might have been a fracture or dislocation at the time, the services rendered by appellant were reasonably worth from $50 to $100 for the operation alone. For appellant Dr. Whitman testified that on the same assumption that appellant's services were worth $500 and if it was not a fracture they were not worth a picayune. Dr. Mitchell testified that assuming that there was a fracture, appellant's services were worth from $500 to $700 for the entire case. Dr. Swift testified that, assuming that there was a fracture and dislocation, the services were worth from $500 to $1,000, but assuming that there was no serious dislocation, they were worth about $50. Dr. Robert Hutchinson, the father of appellant, testified that the reasonable charges for the services were $1,000. It was admitted that a Dr. McInnes, if present, would testify, that, assuming the services to have been performed as testified to by Dr. Hutchinson, the services would be worth $500.

There are various circumstances weakening appellant's claim to recover so much as he now urges. He

only charged appellee $575 on his books for his entire services, and told him he would take $500 for a cash settlement.  In his bill of particulars he claims $1,050 for his services.  He tries to explain this difference by saying that he charged these sums if a cash settlement were made.  It certainly is unusual to charge one sum as the expected compensation upon a plaintiff's books and then charge him as much again if it becomes necessary to sue for it.  This, with the difference in values placed upon his services by the physicians, and the doubt existing as to whether or not there was a fracture, may well have tended to weaken the value of appellant's services in the eyes of the jury, and having thus tampered with his own claim, he cannot complain that the jury looked upon it with suspicion, and the jury may have thought that appellant's conduct in forcing himself into the case after he knew that the family preferred an older and more experienced surgeon was unprofessional, and they may have believed from the evidence that appellee's back was not broken, and that the treatment of appellant in setting the supposed fracture was extremely violent, unskilful and unnecessary from which he was subjected to severe pain and suffered mental anguish, and that the amount of the verdict is as much as his services were reasonably worth.  Certainly these were questions of fact where the jury's finding should not be disturbed, where such finding is not manifestly against the greater weight of the evidence.

In the ninth and tenth instructions given for appellee, appellant was required, in the treatment of appellee, to bring to the case and exercise that degree of knowledge, skill and care which a good physician and surgeon would use in that case under the same circumstances.  It is urged that this language was improper.  Perhaps some more modern phrase might have been employed, but the Supreme Court in Holtzman v. Hoy, 118 Ill. 534, the cause of action being the alleged neglect and unskilfulness on the part of the

defendant as a physician and surgeon in the treatment of plaintiff's leg for a serious and complicated fracture, said: "The duty which the defendant, as a physician and surgeon, owed the plaintiff, was to bring to the case in hand that degree of knowledge, skill and care which a good physician and surgeon would bring to a similar case under like circumstances." This case has never been overruled or modified and it fully answers the argument and authorities cited by counsel for appellant in support of the criticism of this feature of the instructions. The tenth instruction also told the jury that if the appellant in treating appellee did not use and exercise that degree of knowledge, skill and care described in the ninth instruction, and that in consequence thereof the appellee suffered pain and mental anguish, then appellee was entitled to compensation therefor as against any claim made by appellant for such services and it was not necessary that appellee or any other witness testify that appellee sustained any amount of damages in dollars and cents, but it was the duty of the jury to allow the appellee such a sum as the jury believed from the evidence would compensate appellee for any such pain and mental anguish, and if the jury found that such amount equaled or exceeded any sum that they found appellant should be allowed for his services and supplies to the appellee in person, then appellant could not recover anything whatever in this action for his services to appellee in person or the supplies furnished appellee. This instruction only authorized an allowance to appellee for any pain caused by appellant's failing to use the skill of a good physician and surgeon, and it expressly leaves it to the jury to determine whether appellant did use that degree of care and skill, and if they find that he did not then it is left to the jury to determine whether in consequence thereof appellee suffered any pain. If this instruction is not strictly correct, still, if the facts were found as therein specified, plaintiff could not recover at all for such

unskilful services, and therefore he was not injured by the instruction. Complaint is also made of appellees' ninth instruction directing the jury that if after considering all the evidence, facts and circumstances, they believed from the evidence that a good physician and surgeon under the same circumstances as surrounded appellant when he was called to treat appellee, would not have placed on the back of appellee a brace similar to the one placed thereon by appellant, and would not have placed on appellee a cast similar to the one placed thereon by appellant, then the jury must not award anything to the appellant for his services in putting on said cast or the things furnished by appellant in doing it. The jury did not follow the direction of the instruction and if they had nothing would have been allowed appellant for the operation, whereas, as the bill for everything outside of the operation was only $50 the jury did allow him $100 for the operation.

Appellee's eleventh instruction told the jury that appellant could not recover in this case unless he had proven to the jury by a preponderance of the evidence that at said time he was a regularly licensed physician and surgeon by the State Board of Health. He did submit oral proof that he was licensed to practice medicine and surgery and the jury found for him and therefore this instruction did not affect the verdict.

During the final argument, one of appellant's attorneys, having referred to the instructions that might be given, the following occurred:

Attorney for appellee: "I object to any reference to instructions on either side."

Attorney for appellant: "I said, the only instruction that we were going to ask is that you do justice; if that is an erroneous proposition we want it in the record."

The Court: "The objection is sustained and I am only ruling in so far that it is not proper to make any reference to the jury that you request exceptions to the remarks of the court."

Attorney for appellant: "I say again that the court will read the instructions to you. That's a part of this case. We have offered some, and they have."

Attorney for appellee: "I object again and except to that statement that wherein he says that they have offered some, and we have, and I ask the court to rule on it and give me an exception to that remark."

Court: "The court will once more sustain the objection and once more call counsel's attention to the fact that the court has ruled that waived and it is improper to make any reference to the instructions."

Appellant complains of this ruling. So far as the jury is concerned, instructions are the instructions of the court, given as the court's view of the law, and the jury should not be informed at whose request they are given. Aneals v. People, 134 Ill. 401; Indiana I. & I. R. Co. v. Otstot, 212 Ill. 429. This contention is without merit.

No substantial error appearing in the record, the judgment of the lower court must be affirmed.

*Affirmed.*